**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DAMEION THURMOND,

          Plaintiff,

v.                                                                Case No. 3:19-CV-0995-NJR

REYNAL CALDWELL, and MICHAEL
MOLDENHAUER,

          Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendants Dr. Reynal Caldwell and Michael Moldenhauer. (Doc. 30). For the reasons set forth below, the Court grants the motion.

### FACTS

Plaintiff Dameion Thurmond, previously an inmate incarcerated at Menard Correctional Center ("Menard"), filed this action pursuant to 42 U.S.C. § 1983 on September 11, 2019. (Doc. 1). Thurmond alleges that Defendants Moldenhauer and Caldwell violated the Eighth Amendment to the U.S. Constitution when they acted with deliberate indifference by not renewing Thurmond's pain medications and lower bunk permit.

On January 8, 2014, Thurmond was prescribed Robaxin, 500 mg pills and Ibuprofen, 400 mg pills, to treat pain. (Doc. 31-2, p. 8). Both prescriptions were to end by June 2014. (*Id*.). Robaxin is a muscle relaxer used to treat skeletal muscle pain. (Doc. 31-1,

p. 3). Ibuprofen is a non-steroidal anti-inflammatory that treats inflammation and pain. (*Id*.).

On February 12, 2015, Thurmond was seen by a nurse at Menard for back pain. (Doc. 31-2, p. 1). Thurmond rated his pain as a "4" on a scale of 1 through 10, with 10 being severe pain. (*Id*.). The nurse noted that Thurmond requested a renewal of his lower bunk permit, but there is no note of a request for pain medication. (*Id*.). The nurse referred Thurmond to be seen by a medical practitioner, and advised Thurmond to return to the Health Care Unit if his symptoms worsen. (*Id*.). At this visit, Thurmond weighed 255 pounds. (*Id*.).

On February 17, 2015, Thurmond was seen by Defendant Moldenhauer. (*Id*. at p. 2; Doc. 31-1). During the visit, Thurmond mentioned the prior x-ray of his left hip in 2011. (Doc. 31-2, p. 2). Defendant Moldenhauer observed that Thurmond had a steady gait, got up and down from the examination table without difficulty, and had "no pain." (*Id*.). Thurmond, on the other hand, testified that during the appointment he explained he was feeling pain in his back and left hip. (Doc. 31-5, p. 43). Defendant Moldenhauer ordered Thurmond to receive a lower bunk permit for three months and an x-ray of his left hip and lumbar/sacral spine. (Doc. 31-2, p. 2). Also, Defendant Moldenhauer ordered follow up for additional treatment as needed. (Doc. 31-2, p. 2).[1] Again, there is no evidence in the record of Thurmond requesting pain medication on February 17, 2015.

---

[1] After February 17, 2015, Moldenhauer never received any communication from Thurmond complaining of the treatment plans from February 17, 2015, discomfort from arthritis, pain in his hips or lower back, or informed by anyone that Thurmond had a need for treatment of such symptoms after February 17, 2015. (Doc. 31-3).

On February 26, 2015, Thurmond received an x-ray of his left hip and lumbar spine. (*Id*. at p. 9). The radiologist compared the images of the recent x-ray to those on June 6, 2011, and noted that the comparison showed degenerative narrowing of the disc at multiple levels, especially L4/L5 and L5/S1, but there was "little change since [the] prior exam." (*Id*.). Also, the radiologist noted that Thurmond had "mild osteoarthritis of the left hip joint which appears to have further progressed since the prior study." (*Id*.).

On or around May 17, 2015, Thurmond was seen by a nurse either at his cell or in the Menard Health Care Unit requesting renewal of his prescription for the muscle relaxer and Ibuprofen. (*Id*. at p. 5; Doc. 1, p. 15; Doc. 33, p. 41). The nurse copied the prescription and sent it to the pharmacy for a refill. (Doc. 31-2, p. 5). The nurse also informed Defendant Caldwell that Thurmond requested a renewal of his lower bunk permit. (*Id*.). At that time, IDOC directives provided that an inmate should weigh at least 350 pounds to be assigned a lower bunk permit on the basis of weight. (Doc. 31-1, p. 3). Besides not meeting the weight minimum, Defendant Caldwell determined that Thurmond's "mild pain did not require a renewal of his lower bunk permit on May 17, 2015." (*Id*.). After May 17, 2015, Defendant Caldwell was never consulted on Thurmond's medical treatment or had an appointment with Thurmond. (*Id*. at p. 4).

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the

burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

DISCUSSION

## I.   Count I – Deliberate Indifference to Serious Medical Need Against Defendants Moldenhauer and Caldwell

The Eighth Amendment prohibits cruel and unusual punishments and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that the individual suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir.

2010). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). "[A] broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, *arthritis*, heartburn and vomiting, a broken wrist, and minor bums sustained from lying in vomit." *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011) (emphasis added). The Seventh Circuit "[has] explained repeatedly, turning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life–threatening and the failure to treat does not exacerbate the condition. . . Pain is a 'uniquely subjective experience,' and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment." *Diaz v. Godinez*, 693 F. App'x 440, 443-44 (7th Cir. 2017).

Defendants contest that Thurmond's mild arthritis and back pain does not constitute a serious medical condition. The Court need not address whether the mild arthritis and back pain constitutes a serious medical condition because even if the Court assumes that Thurmond's conditions were serious, the evidence when viewed in a light most favorable to Thurmond does not establish a genuine issue of fact as to whether Defendants acted with deliberate indifference.

A. *Defendant Moldenhauer*

Failing to provide pain medication to treat back and hip pain on *one occasion* is not deliberate indifference. *Cf. Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)

(acknowledging that "[l]eaving a serious case of GERD untreated for two months is a dereliction of medical duty . . . and given the extreme simplicity of treatment—supplying the sufferer daily with a few pills of an over-the-counter drug—a jury would not be irrational to conclude that the defendants (or at least some of them) knew that the plaintiff had a very unpleasant, potentially dangerous, yet readily treatable disease, yet they had done nothing for two months because they were indifferent to the plaintiff's condition ("you are not bleeding, you are not dead, you are talking to me, so it can't be an emergency")"). "When considering whether an inmate's medical care demonstrates deliberate indifference to his serious medical needs, we look at the inmate's medical care as a whole and not only at incidents in isolation." *Reed v. Indiana Dep't of Corr.*, 30 F. App'x 616, 619 (7th Cir. 2002) (citations omitted). "A finding that a defendant's neglect of a prisoner's condition was an 'isolated occurrence,' ... or an 'isolated exception' ... to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." *Gutierrez v. Pete*rs, 111 F.3d 1364, 1375 (7th Cir. 1997).

Construing the evidence in a light most favorable to Thurmond, Defendant Moldenhauer was not deliberately indifferent to Thurmond's medical needs. The record shows that Thurmond was not denied care, but was examined by Defendant Moldenhauer only one time. During this examination, Defendant Moldenhauer ordered Thurmond to receive a low bunk permit for three months and an x-ray of his left hip and lumbar/sacral spine. (Doc. 31-2, p. 2). Defendant Moldenhauer also ordered follow up for additional treatment as needed. (Doc. 31-2, p. 2). But Defendant Moldenhauer never received any communication from Thurmond complaining of the treatment plans from

February 17, 2015, discomfort from arthritis, pain in his hips or lower back, or informed by anyone that Thurmond needed treatment of such symptoms after February 17, 2015. (Doc. 31-3). "Without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact." *Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002).

While Thurmond allegedly sent a second written request to Defendant Moldenhauer for additional treatment dated August 16, 2016, there are a number of problems with this "written request." (Doc. 1, p. 13). First, the request notes that he had been "having severe pain in [his] back and hip *over the past several days*, [he] could not even *sleep last night* because the pain was that bad." (Doc. 1, p. 13) (emphasis added). Thurmond does not complain that he had been having pain consistently for months. Rather, the record reflects pain on February 12, 2015, February 17, 2015, and May 17, 2015. Second, there is no evidence that this request was delivered to Defendant Moldenhauer. (Doc. 31-5, pp. 55-56). Third, there is no evidence of grievances after August 16, 2016 about Defendant Moldenhauer's treatment or lack thereof. Fourth, there is no evidence that Thurmond could not have presented such a request in a nurse sick call around August 16, 2016.

Accordingly, the motion for summary judgment is granted as to Defendant Moldenhauer.

### B.  *Defendant Caldwell*

Thurmond was never seen by Defendant Caldwell. Rather, on or around May 17, 2015, Thurmond was seen by a nurse, and the nurse informed Defendant Caldwell that

Thurmond requested a renewal of his lower bunk permit and his pain medication. (Doc. 31-2, p. 5). The nurse copied the prescription for Thurmond's pain medication and sent it to the pharmacy. (*Id.*). The nurse then consulted Defendant Caldwell about renewing Thurmond's lower bunk permit. Defendant Caldwell considered the following when he ordered Thurmond's lower bunk permit to not be extended:

1) Thurmond's weight of 255 lbs. recorded on February 12, 2015;

2) Defendant Moldenhauer's observations from February 17, 2015;

3) The February 26, 2015 x-ray; and

4) The nurse's report on the status of Thurmond's medications.

(Doc. 31-1, p. 3).

While Thurmond allegedly sent another written request to Defendant Caldwell dated December 10, 2015, there are a number of problems with this "written request." (Doc. 1, p. 12). First, there is no evidence that this request was delivered to Defendant Caldwell. (Doc. 31-5, pp. 49-54). Second, there is no evidence of grievances after December 10, 2015 about Defendant Caldwell's treatment or lack thereof. Third, the request notes that "[he] was barely able to get up out of the bunk *all day*." (Doc. 1, p. 12) (emphasis added). In other words, Thurmond had only been suffering pain on December 10, 2015—not from May 17, 2015 to December 10, 2015. Fourth, Thurmond was only requesting pain medication—not a renewal of his lower bunk permit. Finally, there is no evidence that Thurmond could not have presented such a request in a nurse sick call around December 10, 2015.

Even recognizing the possibility that Thurmond went months without pain medication, there is no evidence that Defendant Caldwell was deliberately indifferent because Defendant Caldwell was never consulted on Thurmond's medical treatment or had an appointment with Thurmond after May 17, 2015. (Doc. 31-1, p. 4). Again, Defendant Caldwell was under the impression the nurse was taking care of Thurmond's pain medication, and reviewed Thurmond's records to deny the lower bunk permit. The evidence against Defendant Caldwell, at best, amounts to negligence, which cannot support a finding of deliberate indifference. *See Williams v. Guzman*, 346 F. App'x 102, 105 (7th Cir. 2009) (granting summary judgment where plaintiff argued defendants had a duty to read a nurse's note in his medical chart because "[w]ith no evidence that the doctors knew about the note and deliberately disregarded it, failure to review the nurse's note is at most negligence, which is insufficient to establish deliberate indifference"); *Scott v. David*, 2019 WL 1466301, at *5 (S.D. Ill. Apr. 3, 2019) ("Plaintiff's attempt to establish that [the defendant] should have known about [the plaintiff's] medication complaints that were documented in his medical record is insufficient to establish deliberate indifference…[The defendant's] failure to investigate further would amount to no more than mere negligence (at the very most)").

Accordingly, the motion for summary judgment is granted as to Defendant Caldwell.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**. Plaintiff Thurmond shall recover nothing. The Clerk of Court

shall close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  March 28, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**